UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MILTON YOUNG** | **CIVIL ACTION NO. 20-0288** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **JAMES LABLANC, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff Milton Young, a prisoner at David Wade Correctional Center proceeding pro se and in forma pauperis, filed the instant proceeding on approximately March 4, 2020, under 42 U.S.C. § 1983. He names the following defendants: Secretary James Lablanc, Warden Jerry Goodwin, Deputy Warden Angie Huff, Legal Liaison Nikki McCoy, Dr. Fuller, Dr. Bunch, Paula Millwee, Sergeant Chance Williamson, Captain Melcome, Captain Richie, Major Hausly Terrence, and Nurse Amy Touch.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff alleges that, on November 18, 2019, between 5:30 a.m. and 6:10 a.m., he fell attempting to enter his top bunk bed, suffered a head and back injury, and was rendered unconscious. [doc. #s 1, p. 7; 7, p. 2]. He continues to suffer from head, neck, and back pain. *Id.* He received "one dose of pills" and x-rays, but he claims that despite "several emergency sick request[s]" following his "pill dosage," nothing has "been done . . . ." *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that Secretary James Lablanc "failed to take preliminary action to assure the safety of all offenders that is [sic] housed inside of David Wade Correctional Center by not providing in writing, or giving the command of injunctive relief to security, and medical staff members by not remedial before ongoing incidents accure. [sic]." [doc. # 7, p. 1]. He also claims that Lablanc "failed to provide proper medical staff to assure the treatment and safety of offenders." *Id.*

Plaintiff claims that Warden Jerry Goodwin is biased. *Id.* He claims that Goodwin should have implemented measures "to prevent personal injury" such as accommodating offenders who are "not of average size and height such as [Plaintiff]" and instructing prisoners on "how to enter and exit top bunk beds" which are not equipped with railings or ladders. *Id.* at 1-2. He impliedly claims that Goodwin should have arranged medical care: "[Goodwin] clearly was notified in a timely fashion of the complaint which inadequate medical care was on behalf of the medical staff." *Id.* at 1-2.

Plaintiff claims that Nurse Amy Touch "failed to arrive to [Plaintiff's] emergency call with any equipment so that [Plaintiff] could have been given a professional and proper assessment of his injuries." *Id.* at 2. When Touch arrived, she "only looked on and asked the security officers to go and retrieve a wheel chair to place [Plaintiff] in and roll him to the hospital." *Id.* Plaintiff claims that Touch did not assess his injuries. *Id.*

Plaintiff claims that Sergeant Chance Williamson "witnessed the accident . . . [and] activated his radio beeper as for an emergency response to alert all supervisors to an emergency situation." *Id.* at 3.

Plaintiff claims that, in response to Sergeant Williamson's request for assistance, Major Hausly arrived on scene and "gave an order to radio emergency medical staff." *Id.* He claims

2

that, at the direction of Nurse Touch, Hausly and Captain Melcome placed him in wheelchair, which exposed him to further injury. *Id.* He impliedly claims that Hausly and Melcome allowed another offender to push his wheelchair, which risked "more injuries." *Id.*

Plaintiff claims that Dr. Fuller falsified medical documents. *Id.* at 4. He also claims that Fuller committed malpractice by failing to properly assess his injuries. *Id.* He claims further that, while Dr. Fuller recommended an "unknown pain injection which [Plaintiff] refused to take[,]" Fuller failed to treat him. *Id.*

Plaintiff claims that, without personally assessing him, Dr. Bunch concluded in a "first step response" that the medical care rendered by Nurse Touch and Dr. Fuller was adequate. *Id.*

Plaintiff claims that Legal Liaison Nikki McCoy failed to properly "address[] this matter at the A.R.P. stage." *Id.* at 5.

Plaintiff seeks $65,000.00 for his court costs, health care costs, pain, and suffering. [doc. # 1, p. 7; 7, p. 1].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the

same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Defendants Lablanc and Goodwin**

Plaintiff seeks relief from Defendants Lablanc and Goodwin in their individual and official capacities. [doc. # 1, p. 3]. He claims that, before his fall, Secretary James Lablanc should have had taken unspecified actions to ensure that offenders do not injure themselves attempting to climb into top bunks. [doc. # 7, p. 1]. He also claims that Lablanc "failed to provide proper medical staff to assure the treatment and safety of offenders." *Id.*

5

Plaintiff claims that Warden Jerry Goodwin: (1) is biased; (2) should have instructed inmates on how to safely enter and exit top bunks lacking railings and ladders; (3) should have accommodated offenders who are "not of average size and height such as [Plaintiff]"; and (4) should have arranged medical care following his fall.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, with the exception of Plaintiff's claim that Goodwin should have arranged medical care following his fall,[3] he does not plausibly allege that Lablanc or Goodwin affirmatively participated in any act that caused a constitutional deprivation or that there is a sufficient causal connection between defendants' conduct and the alleged constitutional violation. Thus, with the exception of his claim of inadequate medical care against Goodwin, the Court should dismiss Plaintiff's personal-capacity claims against Goodwin and Lablanc.[4]

---

[3] The undersigned addresses this claim below.

[4] See *Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally

6

To the extent Plaintiff alleges that defendants implemented unconstitutional policies that caused his injuries—or failed to implement policies to prevent his injuries—he necessarily seeks relief from defendants in their official capacities as purported policymakers.

Plaintiff seeks only monetary relief. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. In that respect, "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." *Id.*

Here, the State of Louisiana employs Lablanc and Goodwin. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court should dismiss Plaintiff's official-capacity claims against Lablanc and Goodwin.

### 3. Medical Care

Plaintiff raises several claims concerning inadequate medical care. A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174,

---

involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

7

176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff alleges that Sergeant Williamson witnessed his fall and notified "supervisors to an emergency situation." Major Hausly, Captain Melcome, and Captain Richie responded to Sergeant Williamson's notification. Hausly "gave an order to radio emergency medical staff." Nurse Touch viewed Plaintiff after his fall and instructed officials to transport him to the hospital. Hausly and Melcome arranged his transportation to the hospital, utilizing the supervised assistance of another inmate. None of these actions bespeak deliberate indifference.

Plaintiff claims, without elaborating, that Dr. Fuller falsified medical documents. This

8

allegation is entirely conclusory. Plaintiff does not, for instance, identify a particular document, explain why any document was false, or allege that this action harmed him.

Plaintiff claims that that Fuller committed malpractice by failing to properly assess his injuries. He claims further that while Dr. Fuller recommended an "unknown pain injection which [Plaintiff] refused to take[,]" Fuller failed to treat him. *Id.* He concedes that he received x-rays and "one dose of pills."

Dr. Fuller's alleged actions do not reflect deliberate indifference. Rather, Plaintiff simply disagrees with, or is dissatisfied with, the treatment he did receive. See *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."). His disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. See *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).[5]

Plaintiff claims that, without personally examining him, Dr. Bunch concluded in a "first step response" that the medical care rendered by Nurse Touch and Dr. Fuller was adequate. In the response Plaintiff references, an official wrote:

> I have reviewed your request for administrative remedy in which you claim inadequate medical care and a violation of your 8th amendment rights. On 11/18/19 you were examined by medical after a reported fall. No trauma was noted but you were referred for a physician evaluation. You were examined by

---

[5] See also *Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference.").

> Dr. Fuller later that morning and found to be in no distress. Dr. Fuller documented that you had no signs of trauma. X-rays and pain medication were ordered. You were offered an injection for pain but declined. You have submitted two additional sick calls with reports of continued complaints of pain since your physician evaluation. You were encouraged to take the available Tylenol as needed. The pain control medication ordered by Dr. Fuller can be taken with Tylenol. Both of these sick calls were reviewed by Dr. Bunch with no additional orders given. Both of your x-rays were done on 11/20/19. The x-ray report for your neck documents that your disc space is well maintained. No evidence of fracture was documented. The x-ray report for your hip documents a normal left hip. Your medical needs were appropriately addressed.

[doc. # 7-1, p. 5].[6]

Liberally construed, Plaintiff appears to claim that, following his treatment on November 18, 2019, he continued to suffer from pain yet Dr. Bunch deferred to the alleged improper care rendered by Nurse Touch and Dr. Fuller.

Of import, it appears that, when Dr. Bunch declined to provide additional treatment, Plaintiff continued to receive "pain control medication" and, in addition, Tylenol. [doc. # 7-1, p. 5]. Thus, Plaintiff's allegation that Bunch refused to treat him (or ignored his complaints) is implausible. Further, Plaintiff does not allege that his injuries "dramatically increased in severity" between his prior treatment on November 18, 2019, and Bunch's subsequent opinion such that Bunch "would have effectively denied or delayed treatment for a new injury not previously treated . . . ." See *Petzold v. Rostollan*, 946 F.3d 242, n. 42 (5th Cir. 2019). To the extent Plaintiff simply disagrees with Dr. Bunch's decision to forego additional or different care in favor of the treatment Plaintiff already received, Plaintiff does not describe deliberate indifference. "[A]n official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment

---

[6] See *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls [and] examinations . . . may rebut . . . allegations of deliberate indifference.").

10

request for the same injury. . . . [M]erely refusing to provide additional treatment is insufficient for deliberate indifference." *Petzold*, 946 F.3d at 242 (finding that a supervisor did not deny or delay treatment because a nurse already treated the plaintiff's injury and the supervisor, who lacked medical training and who was aware of the prior treatment, simply "*deferred* to a medical professional's prior treatment.").

Further, that Bunch acted without personally examining Plaintiff does not change this conclusion. See *Kirby v. Johnson*, 243 F. App'x 877, 879 (5th Cir. 2007) (finding, where the plaintiff asserted that "his psychiatric medications were discontinued abruptly without sufficient examination of his medical records and without thorough medical examinations[,]" that the plaintiff's "claims constitute[d] a disagreement with medical treatment rather than a cognizable claim of deliberate indifference to a serious medical need under the Eighth Amendment.").[7]

Next, Plaintiff claims that Legal Liaison Nikki McCoy failed to properly "address[] this matter at the A.R.P. stage." He attaches a response to his request for relief, in which McCoy noted that she accepted his request and that a response would be "issued within 40 days of this date." [doc. # 1-2, p. 3]. He also attaches a "Memo," in which McCoy noted that she received

---

[7] See, e.g. *Cook v. Fitts*, 2008 WL 4104429, at *4 (S.D. Tex. Aug. 30, 2008) (finding, where the plaintiff alleged that a physician "took him off his statin and prescribed him aspirin . . . after merely looking at his file and not meeting with him in person[,]" that the plaintiff failed to "state a constitutional violation" and that, at most, the claim amounted to "negligence which is not actionable under section 1983."); *Snell v. Cmty. Educ. Centers Corr. & Med. Staff*, 2012 WL 3956328, at *10 (E.D. Tex. June 20, 2012), report and recommendation adopted, 2012 WL 3930062 (E.D. Tex. Sept. 10, 2012) (dismissing a claim that a doctor prescribed treatments without examining the plaintiff because plaintiff offered "nothing to show that an examination would have changed any of [the doctor's] prescriptions or the doctor's course of treatment, nor [did] he show that the prescribing of treatment for pain without a personal examination is tantamount to deliberate indifference to serious medical needs."); c.f. *Thompson v. Ackal*, 2016 WL 1394352, at *12 (W.D. La. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1391047 (W.D. La. Apr. 6, 2016) (finding that the plaintiff stated a claim where a physician allegedly failed to examine the plaintiff *and* failed to review the plaintiff's medical records).

11

Plaintiff's request to send his "Administrative Remedy Procedure (ARP) to the Secretary" and that "[t]he necessary documents have been sent to the Secretary for review." *Id.* at 1.

Under Plaintiff's allegations, McCoy relayed Plaintiff's requests for care—or, more specifically, his grievances concerning prior inadequate care—to others with authority to address his complaints. This does not reflect deliberate indifference. See *Taylor v. Stevens*, 946 F.3d 211, 224 (5th Cir. 2019) ("Taylor didn't allege that Henderson failed to notify the officers. And even if Henderson did fail to do so . . . , such would amount, at most, to a showing of negligence, not deliberate indifference.").

Next, Plaintiff claims that Warden Goodwin knew that his requests for care were "never addressed." [doc. # 7, p. 2]. It is manifest, however, that healthcare professionals addressed Plaintiff's request.

Finally, Plaintiff appears to claim that Defendants Millwee, Huff, and Goodwin failed to properly address his grievances and requests for emergency care. [doc. # 7, pp. 1-2, 4]. At worst, however, these defendants simply deferred to the treating professionals' opinions, which, as above, does not amount to deliberate indifference. [See doc. # 7-1, p. 5]; see *Kadlec*, 272 F.3d at 392 (holding that prison officials' decisions to abide "by the medical personnel's instructions" to "refuse to provide [the inmate] with a handicap shower[]" did not reflect deliberate indifference); *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) ("Baughman's complaint about Deputy Durham, a non-medically trained lay person, is that he observed Baughman in pain yet deferred to the decisions of multiple medical personnel. This fails to state a claim against Deputy Durham.").

Accordingly, the Court should dismiss these claims.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Milton Young's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 11th day of May, 2020.

Karen L. Hayes
United States Magistrate Judge

13